IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No.   13-mj-01121-MJW

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

1. **PREMIER PAVING, INC.,**

    **Defendant.**

---

## PLEA AGREEMENT

---

The United States of America, by and through John F. Walsh, United States Attorney for the District of Colorado, and Beth Gibson, Special Assistant United States Attorney, and the defendant, Premier Paving, Inc. (PPI), personally and by counsel, Daniel Recht and Richard Kornfeld of Recht Kornfeld, P.C., hereby submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

### I.   AGREEMENT

*A.   Defendant's Obligatons:*

The defendant agrees to plead guilty to an Information, charging the defendant with a pattern or practice of illegal employment, in violation of 8 U.S.C. § 1324a(a)(1), (a)(2) and (f).  The defendant further agrees to pay forfeiture pursuant to 18 U.S.C. § 982(a)(6).

*B.   Government's Obligations:*

In exchange for the defendant's plea of guilty, the United States agrees to recommend the Court give the defendant full credit for acceptance of responsibility per USSG § 3E1.1, unless the



defendant or any of its principals engages in conduct that qualifies for the obstruction of justice enhancement under §§ 3C1.1 and 3E1.1, comment (note 4) between the time of the plea hearing and sentencing.

## II. ELEMENTS OF THE OFFENSE(S)

The parties agree that the elements of the offense to which the defendant is entering a plea of guilty are as follows:

*First*: A person or entity;

*Second*: Hired and continued to employ;

*Third*: Aliens unauthorized to work in the United States;

*Fourth*: Knowing the aliens were not authorized to work in the United States; and

*Fifth*: Made it a pattern or practice to engage in such hiring and employment.

## III. STATUTORY PENALTIES

The defendant is pleading guilty to a Class B misdemeanor. The maximum penalties are a $3,000 fine for each unauthorized alien employed in violation of the law, probation for a period not to exceed five years (because the defendant is an organization), and a $50 special assessment. Forfeiture is also applicable pursuant to 18 U.S.C. § 982(a)(6).

## IV. STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. Additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. §3553 factors, or to the Court's overall sentencing decision.

The parties stipulate and agree as follows:

The defendant is a corporation and does business in Colorado. From January 2007 through September 2012, the defendant hired and continued to employ aliens knowing that some of those aliens were not authorized to work in the United States. During this period, PPI actors hired aliens who lacked the documents required by law to complete an employment eligibility verification form (form I-9).

U.S. Immigration and Customs Enforcement (ICE) audited PPI's employment records in 2007. As a result, on September 7, 2007, ICE issued a notice of suspect documents. The notice advised PPI that approximately 39 of its employees appeared not to be authorized to work in the United States. A list of the names of those 39 employees was attached to the notice. The notice expressly advised PPI that "the documentation previously provided to you for these employees does not satisfy the Form I-9 employment eligibility verification requirements of the Immigration and Nationality Act. Unless the above employees' present valid identification and employment eligibility documentation acceptable for completing the Form I-9, other than the documentation noted above, they are considered by the ICE to be unauthorized to work in the United States. If you continue to employ these individuals without valid documentation, you may be subject to a civil money penalty ranging from $275 to $2,200 per unauthorized alien for a first violation. Higher penalties can be imposed for a second or subsequent violation. Further, criminal charges

may be brought against any person or entity which engages in a pattern of practice of knowingly hiring or continuing to employ unauthorized aliens."

To resolve the administrative case, PPI entered into a settlement agreement with ICE on June 12, 2008. As part of that agreement, ICE agreed to reduce the amount of the fine it sought from $27,800 to $11,000. The signed settlement agreement advised PPI that it "can hire only United States citizens and aliens authorized to work in the United States." It further advised PPI that "any person or entity which engages in a pattern or practice of knowingly hiring or continuing to employ unauthorized aliens, hired after November 6, 1986, in addition to the civil penalties that may result, can be subject to criminal penalties of fines up to $3,000.00 for each unauthorized alien and/or six months imprisonment."

Subsequent to entering into the settlement agreement with ICE, PPI engaged the services of an entity located in Denver known as Servicios de Migracion Para Todos, which was owned and run by Michael P. Oboley ("Oboley"). PPI received a referral to Oboley from a trucking company, the owner of which explained to representatives of PPI that Oboley could file paperwork to allow previously illegal workers to work legally in the United States. Representatives of PPI met with Oboley, who advised that he and his company could help undocumented workers obtain legal work status in the United States. On August 17, 2007, PPI engaged Oboley, paying him a retainer of $5,000. Oboley subsequently provided to PPI "proof" that the applications for the undocumented workers had been filed with ICE, and told representatives of PPI that the applications were "in process." This "proof" was in the form of ICE-generated case numbers for each undocumented worker. In March 2008, Oboley forwarded PPI emails from ICE confirming the filing of a "Permanent Application" for each undocumented worker. Upon information and belief, these filings were legitimate, as were the ICE emails forwarded to PPI. In addition,

4

Oboley repeatedly told representatives of PPI that the undocumented workers were allowed to work in the United States while their applications were "in progress" with ICE. However, Oboley failed to render the services promised, failed to follow through with ICE, did not obtain lawful status for the employees, and eventually left the State of Colorado without completing the promised work for PPI. Subsequently, another review conducted by ICE in September 2012 determined that PPI continued to employ approximately 15 of the unauthorized workers who were the subject of the suspect document notice and settlement agreement.

In addition to continuing to employ those unauthorized workers, PPI failed to adequately complete forms I-9 for a number of employees hired between January 1, 2011 and September 20, 2012. Moreover, PPI entered into contracts with the federal government to perform work for the Department of Transportation. One such contract stated that the "[c]ontractor [PPI] certifies, warrants, and agrees that it does not knowingly employ or contract with an illegal alien who will perform work under contract and will confirm the employment eligibility of all employees who are newly hired for employment in the United States to perform work under this contract, through participation in the E-Verify Program or the department program established pursuant to CRS Section 8-17.5-102 (5)(c)". Despite such certification, to perform the contract, PPI used the labor of approximately 14 workers who lacked lawful status between October 3, 2009 and May 28, 2010. Of those 14 workers, 12 were also the subject of the 2007 notice of suspect documents and the 2008 settlement agreement. PPI was paid approximately $2.3 million for that contract. From that $2.3 million, PPI paid for labor and materials to perform the contract. PPI claims to have lost approximately $560,920 on that contract.

## V.   AGREEMENTS OF THE PARTIES REGARDING FORFEITURE

The defendant agrees to the entry of a forfeiture money judgment in the amount of no less than $56,450.10 and no more than $585,000.  In advance of sentencing, the defendant agrees to meet with agents and provide truthful information (as determined by the government's review of relevant documents) regarding the company's profits from the government contracts at issue.  In the event the defendant has provided truthful information regarding the profits and losses, the government will not seek more than $56,450.10 in forfeiture.  In the event the defendant's calculation of profits and loss is not accurate, the government will seek up to $585,000 in forfeiture (20% of the total the defendant earned on the relevant government contracts).  If the parties cannot agree to the appropriate forfeiture amount, the parties will request a hearing and accept the Court's finding as final.  The defendant further agrees to remit funds in satisfaction of the forfeiture money judgment on or before the day of sentencing in this case.  In the event the defendant fails to do so, the government will seek to collect, including against the principals of the company.  This represents the value of property and direct or indirect proceeds as set forth in 18 U.S.C. § 982(a)(6) as well as any property that is traceable to, derived from, fungible with, or a substitute for property that constitutes the proceeds of illegal employment offense.  The defendant further agrees to waive all interest in the asset(s) in any forfeiture proceeding.  The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.  The defendant further agrees to waive all constitutional and statutory challenges to forfeiture.  The defendant also waives any failure by the Court to advise the defendant of any applicable forfeiture at the time the guilty plea is accepted as required by Rule

11(b)(1)(J). The defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. The defendant understands and agrees that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct, property facilitating illegal conduct, property involved in illegal conduct giving rise to forfeiture, or substitute assets for property otherwise subject to forfeiture.

## VI.     OTHER PROCEEDINGS

The United States makes no promises or predictions regarding possible debarment of the defendant or any of its principals or employees. Nothing in this agreement shall release, prevent, bar, or compromise any debarment or other action or proceeding related to federal contracting. This plea agreement subsumes any civil sanction against the defendant related to its compliance with the Immigration and Nationality Act's employee eligibility verification (form I-9) requirements for the period described in this agreement. The defendant is not absolved from future compliance with those laws and may be subject to inspection and fines for any conduct after September 2012. Any future failure of the defendant to comply with such laws will be regarded as a subsequent offense and subject the defendant to increased civil penalties. Finally, the United States Attorney's Office declines to pursue civil proceedings for the conduct described in this plea agreement and statement of facts.

## VII. ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 10-9-2013

_____
Russ Otterstein
Defendant/PPI Representative

Date: 10/9/13

_____
Daniel Recht
Richard Kornfeld
Attorneys for Defendant

Date: 10/9/13

_____
Beth Gibson
Special Assistant U.S. Attorney